UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| TRACEY A. CANNON, *ET AL.*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) NO.: 2:12-CV-88 |
| | ) |
| CITICORP CREDIT SERVICES, | ) |
| INC., (USA), *ET AL.*, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

The plaintiffs[1] filed their Amended Complaint, [Doc. 47], on May 28, 2013. The defendants, Citicorp Credit Services, Inc. (USA) and Citibank, N.A. (collectively, "Citi" or "defendants") filed the instant Motion to Dismiss, [Doc. 48], pursuant to Federal Rule of Civil Procedure 12(b)(6) on June 7, 2013. The matter is ripe for review. For the reasons that follow, the Motion will be GRANTED IN PART and DENIED IN PART.

I. BACKGROUND

The plaintiffs agreed to work for Citi at its call center in Gray, Tennessee in exchange for pay for all "hours worked." [Doc. 47, pg. 16, ¶ 55]. "Employees [were] paid and evaluated based upon the percentage of time they [spent] on phone calls while logged into the phone system." [Doc. 47, pg. 16, ¶ 34]. Plaintiffs allege that Citi forced hourly employees to work off-the-clock and failed to pay them for these hours worked. Citi did so by forcing employees to perform work prior to logging onto the phone system or after logging off. [Doc. 47, pg. 16, ¶

---

[1] The Amended Complaint contains class allegations. This Court will refer to the two named plaintiffs collectively as "plaintiffs."

1

36]. Citi also made employees work during their paid rest and lunch periods. [Doc. 47, pg. 16, ¶ 36].

The plaintiffs brought suit and allege six causes of action. These include: violation of the Fair Labor Standards Act ("FSLA"), 29 U.S.C. § 201 *et seq.*, (Count I); breach of an implied contract – failure to pay for work off-the-clock (Count II); breach of an implied contract – failure to provide rest and meal breaks (Count III); unjust enrichment (Count IV); conversion (Count V); and violation of Tennessee Code Annotated section 50-2-101 *et seq.*, for unfair wage and hour practices (Count VI). The defendants move to dismiss Counts II through IV pursuant to Federal Rule of Civil Procedure 12(b)(6). They do not move to dismiss Counts I and VI.

## II. STANDARD OF REVIEW

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Moreover, Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on

2

its face," id. at 570; see also *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-50 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S.Ct. at 1949. Moreover, this Court need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 129 S.Ct. at 1949. Lastly, this Court may consider documents central to the plaintiff's claims to which the complaint refers and incorporates as exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## III. ANALYSIS

### A. Whether state common law counts are preempted by the Tennessee Wage Regulation Act.

First, the defendants argue that the state common law claims, Counts II through V, are preempted by the Tennessee Wage Regulation Act ("TWRA"), Tenn. Code Ann. § 50-2-101 *et seq.*, because "where 'a statute creates a new right and prescribes a remedy for its enforcement, then the prescribed remedy is exclusive.'" [Doc. 48-1, pg. 5] (quoting *Fonseca v. Golden Living Center-Mountainview*, No. 4:09-CV-93, 2010 WL 3155984, at *9 (E.D. Tenn. Aug. 10, 2010)). Defendants quote and rely on the language in section 50-2-101(b) for the remedy portion of their argument. It states, "The amount agreed upon between employer and employee . . . shall constitute a basis for litigation in civil cases." Tenn. Code Ann. § 50-2-101(b) (2012). However, this version of the statute was effective from August 14, 2008 to April 22, 2013. On April 23, 2013, however, the legislature amended the statute. *See* Act of Apr. 23, 2013, 2013 Tenn. Pub. Acts Ch. 240 §§ 1, 2 (amending Tenn.Code Ann. § 50–2–101). In relevant part, the legislature removed language specifying that the wage amount agreed upon between employer and employee "shall constitute a basis for litigation in civil cases," Tenn.Code Ann. § 50–2–101

3

(2012), and added language directing that "[t]he department of labor and workforce development shall enforce this section," 2013 Tenn. Pub. Acts Ch. 240 § 2. (Docket No. 255–1).

In addition, a district court has held that this amendment was retroactive, and that there never has been a private right of action pursuant to the TWRA. *Abadeer v. Tyson Foods, Inc.* -- F.Supp.2d --, 2013 WL 5498190, at *22-24 (M.D. Tenn. Oct. 03, 2013). This Court finds that case persuasive and relies upon its reasoning. Accordingly, if the TWRA does not allow for a private right of action, then it cannot be the exclusive remedy. As such, the defendants preemption argument fails. The motion on this issue will be DENIED. In addition, Count VI is based on the TWRA. The Court plans on dismissing that Count *sua sponte*. The parties may file a brief of no more than five pages regarding this issue by April 15, 2014.

**B. Whether the implied contract claims, Counts II and III, should be dismissed for failure to state a claim.[2]**

The defendants argue that the implied contract claims should be dismissed for failure to state a claim, and they rely upon a case deciding a similar issue pursuant to Kentucky law in a "copy-cat lawsuit against Citi." [Doc. 53, pg. 11]; *see Russell v. Citi*, No. 2:12-CV-00016, 2012 WL 5947450, at *2-3 (E.D. Ky. Nov. 28, 2012).

Tennessee recognizes "two distinct types of implied contracts; namely, contracts implied in fact and contracts implied in law, commonly referred to as quasi contracts." *Angus v. City of Jackson*, 968 S.W.2d 804, 808 (Tenn. Ct. App.1997). An implied-in-fact contract is "one that 'arises under circumstances which show mutual intent or assent to contract.'" *Givens v. Mullikin*, 75 S.W.3d 383, 407 (Tenn. 2002) (quoting *Angus*, 968 S.W.2d at 808). To be enforceable, an implied-in-fact contract must be supported by mutual assent, consideration, and lawful purpose. *Mullikin*, 75 S.W.3d at 407. An express oral contract and an implied-in-fact contract are similar,

---

[2] The Court is taking the defendants' arguments out of turn, for this Court concludes that it would be more efficient to do so.

4

but they differ in the manner in which the parties manifest their assent. "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression. . . . In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." *River Park Hospital, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, No. M2001–00288–COA–R3–CV, 2002 WL 31302926, at *10 (Tenn. Ct. App. Oct.11, 2002), *appl. perm. appeal denied* Feb. 18, 2003. "[A]n implied contract 'must result from a meeting of the minds of the parties in mutual assent to the terms, [and] must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Mullikin*, 75 S.W.3d at 407 (quoting *Johnson v. Central Nat'l Ins. Co.*, 356 S.W.2d 277, 281 (1962)).

Here, the defendants argue that the plaintiffs' allegations of an implied contract for hours worked fails to state a claim especially regarding mutual assent. The defendants argue that the plaintiffs' general allegations are insufficient, and the specific allegations actually negate the existence of an implied contract as to hours worked. The defendants assert that the specific allegations are that the defendants' practice has been *not* to pay employees for hours worked and to "force" them to work off-the clock. Thus, the allegations are contrary to mutual assent. Again, the defendants rely on *Russell* for this argument. That court dismissed the implied contract count based on hours worked, and stated in full on this issue:

> In the instant case, Plaintiff asserts that he entered into two separate implied-in-fact contracts with Defendant. In Count 1, he alleges that he contracted to "work for Citi in exchange for payment for all hours worked," including "off-the-clock" hours. According to Plaintiff, this contract is evidenced by his pay-stubs, the nature of his employment, "other circumstances surrounding the parties' employment relationship," and "the situation and objective of Citi as an employer." (Doc. # 1, at ¶ 34). These vague allegations are not evidence of a contract. If they were, all employees would have an implied contract with their employer. As

5

> this Court has explained, implied-in-fact contracts require more than just payment for services:
>
>> "[An implied-in-fact contract] requires stricter proof ... than to establish ordinary contracts—more than proof of performance of the services and casual, indefinite expressions of an intention to pay for same, or acknowledgment of gratitude or dependence on the part of the recipient, or expressions of a wish or desire that the server or attendant should be compensated, for cases of this character are pregnant with danger of spoliation."
>
> *BDT Products, supra* (quoting *Kellum, supra* at 464). Simply stated, Plaintiff's pay stubs do not constitute a contract. Count 1 thus fails to state a claim upon which relief can be granted.

*Russell*, 2012 WL 5947450, at *3.

It is true that the plaintiffs in the instant case made the same allegations as quoted above. Also, Kentucky law is similar to Tennessee law on implied contracts. At this stage in the litigation, however, this Court is not willing to conclude that the plaintiffs have failed to state a claim.

While the defendants do not argue that they did not agree to compensate the employees for all hours worked, it appears they must disagree as to "hours worked's" meaning. Otherwise, there could be no dispute regarding payment for hours worked or nonpayment for hours worked "off-the-clock." The court in *Abadeer* addressed this similar issue. 2013 WL 5498190, at *20. In that case, the parties agreed that the employees were to be compensated for all hours worked. *Id*. The defendant argued, however, that the parties construe the meaning differently, and thus, there was no meeting of the minds. *Id*. The court stated:

> . . . . The FLSA specifies national rules for compensating employees for the hours they work that serve as a statutory floor below which no contract may go. *See, e.g., Singh v. City of New York*, 524 F.3d 361, 372 n. 10 (2d Cir. 2008) (Sotomayor, J.) ("the FLSA provides ... a floor as to when an employer must compensate

6

> employees for their time"). And the statute requires that "all hours worked must be compensated." *Chao*, 184 Fed.Appx. at 510. As a result, the judicially construed definition of "hours worked" under the FLSA establishes the minimal meaning of this term, which both parties agree is part of the employees' contracts for employment at the Goodlettsville plant.
>   This result is consistent with Tennessee law. Tennessee courts, the Court notes again, recognize that applicable federal and state laws, like the FLSA, can be the source of terms in employment contracts. *See Vargo*, 115 S.W.3d at 491. Further still, Tennessee courts will not enforce contractual conditions that are contrary to law, such as an agreement to pay an employee less than the FLSA-defined minimum wage. *See, e.g., Baugh v. Novak*, 340 S.W.3d 372, 385 (Tenn.2011) ("Tennessee courts have long recognized that, as a general rule, a contract explicitly prohibited by statute is unenforceable.").

*Id*.

This Court finds the reasoning in *Abadeer* persuasive. Contrary to *Russell*, which is not binding on this Court, this Court concludes that the parties reached mutual assent as to hours worked upon the employee beginning work. The Court does not find the allegations in the Amended Complaint contradictory. The pay stubs are evidence of the agreed upon amount of pay per hour worked. The plaintiffs' allegations as to not being paid for hours prior to and after being logged onto the phone system are evidence of an alleged breach. Here, there are sufficient allegations to establish mutual assent to hours worked, those being the statutory minimum floor provided for in the FLSA. As such, the motion to dismiss in this regard is DENIED.

Also, the defendants move to dismiss Count III, implied contract regarding failure to provide rest and meal breaks, pursuant to Rule 12(b)(6) for failure to state a claim. Again, they rely upon *Russell*. Regarding that issue in *Russell*, however, the Court stated that the complaint failed to allege that rest or meal breaks were ever promised or agreed to. 2012 WL 5947450, at *3. Here, the Amended Complaint specifically alleges that the defendants "agreed to provide rest and meal breaks." [Doc. 47, pg. 17, ¶ 61]. In addition, *Russell* found the complaint's

7

allegations as to this count contradictory, so there could be no mutual assent. Again, this Court disagrees. The mutual assent was reached when the employee started work based on the agreement that he or she would receive such breaks. The allegations that they did not receive these breaks or that they were forced to work through them go to evidence of a breach. The defendants' motion in this regard is also DENIED.

**C. Whether the conversion claim should be dismissed for failure to state a claim.**

The defendants argue that Count V, the conversion claim, should be dismissed for failure to state a claim pursuant to Rule 12(b)(6). In Tennessee, the intentional tort of conversion is defined as the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965); *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn. Ct. App.1988). To make out a *prima facie* case, a party must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard v. Shoney's, Inc.*, 100 F.Supp.2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

The defendants rely upon *Bowman v. PHP Companies, Inc.*, 3:04-CV-114, 2005 WL 2993902, at *10, (E.D. Tenn. Nov. 08, 2005). There, the court noted that Tennessee courts have never addressed whether an employer's failure to pay compensation allegedly owed to an employee can constitute conversion. *Id*. Thus, the court relied upon case law from other jurisdictions which suggests that such facts do not state a claim for conversion. *Id*. This Court finds that case and the cases it cites persuasive. This Court likewise holds that an employer's alleged failure to pay wages promised does not constitute conversion. As such, the defendant's motion to dismiss in this regard is GRANTED.

**D. Whether the remaining common law claims (Counts II and III-breach of implied contract-and Count IV-unjust enrichment) to the extent they seek overtime compensation are preempted by the FLSA.**

The defendant argues that to the extent these common law claims seek overtime compensation, they are preempted by the FLSA claim (Count I). The defendants correctly note that the Sixth Circuit has not addressed this preemption issue. They are also correct in that the other circuit courts that have addressed the issue are split and that district courts in this circuit are split. The Court has reviewed all of those cases, and it finds the following cases persuasive: *Woodall v. DSI Renal, Inc.*, No. No. 11–2590, 2012 WL 1038626, at *3-6 (W.D. Tenn. Mar. 27, 2012) and *Carter v. Jackson-Madison County Hosp. Dist.*, No. 1:10–cv–01155–JDB–egb, 2011 WL 1256625, at *9-12 (W.D. Tenn. Mar. 31, 2011). It is unclear from the Amended Complaint whether Counts II through IV seek compensation for hours worked that could also be classified as overtime. It appears this may be the case. However, it is clear from *Woodall* and *Carter* that breach of contract claims and unjust enrichment claims are not preempted by the FLSA. Therefore, based on *Woodall* and *Carter*, this Court holds that Counts II through IV are not preempted by the FLSA. Therefore, the motion to dismiss in this regard is DENIED. If, at a later time, it becomes clear that the plaintiffs do seek compensation under these Counts for what would also be classified as overtime, then the Court may readdress the issue whether it be through defendants' motion, election of remedies or some other situation.

**IV. CONCLUSION**

For the reasons set forth above, the motion is GRANTED IN PART and DENIED IN PART. In addition, the parties may file a brief of no more than five pages by April 15, 2014, regarding whether this Court should dismiss Count VI, which is based on the TWRA because TWRA does not allow a private right of action.

9

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE